**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PAUL MENDEL,

      Plaintiff,

vs                                  Case No: 11-10496

                                             Honorable Victoria A. Roberts

CITY OF GIBRALTAR,

      Defendant.

_____/

<u>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

**I.    INTRODUCTION**

Before the Court is Defendant City of Gibraltar's Motion for Summary Judgment (Doc. # 17).  Oral argument was held on January 25, 2012.  The Court has a Settlement Conference scheduled for February 3, 2012.

The Court **GRANTS** Defendant's Motion; the settlement conference is cancelled.

**II.    BACKGROUND**

Plaintiff Mendel worked for the City of Gibraltar Police Department as a dispatcher when his employment was terminated on or about February 23, 2009.  The City terminated Plaintiff after he failed to report for five scheduled shifts; it says he did not provide sufficient medical documentation explaining his absence.  Police Chief Canterbury sent a letter to Plaintiff, informing him the City considered the Plaintiff's employment voluntarily terminated.

Plaintiff filed suit on February 7, 2011, alleging that his termination violated his Family Medical Leave Act (FMLA) rights.  Defendant filed this Motion for Summary Judgment alleging that Plaintiff is not an "eligible employee" under the FMLA.

## III.   ARGUMENTS

Defendant admits that since it is a public agency, it is an FMLA employer; all public employers are an "employer"" for purposes of the FMLA.  29 U.S.C. § 2611(4). However, Defendant contends that Plaintiff is not an "eligible employee" entitled to benefits as defined in the FMLA implementing regulations, 29 C.F.R. § 825.108(d).  To qualify under this provision, "employees of public agencies must meet all of the requirements of eligibility, including the requirement that the employer (e.g., State) employ 50 employees at the worksite or within 75 miles."  *Id.* § 825.108(d); *see also* 29 U.S.C. § 2611(2)(B)(ii).  Defendant says it employs less than fifty people within 75 miles of the Plaintiff's former worksite.

Defendant bases this position on its belief that the people who provide services to the City Fire Department are strictly volunteers; therefore, no firefighter is an employee for purposes of the FMLA and the Fair Labor Standards Act (FLSA), which the Court must look to for the definition of eligible employee.  If the firefighters are not employees, then the City employs forty-one workers – an insufficient number of workers for the Plaintiff to be considered an "eligible employee" under the FMLA.

Defendant admits that its firefighters receive $15 per hour responding to calls and maintaining equipment, but disputes that this payment transforms its volunteers into employees.  Volunteers cannot receive "compensation" for their work: 29 C.F.R. § 553.101 ("[a]n individual who performs hours of service for a public agency for civic,

2

charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours."). However, they may receive a nominal fee and still be considered volunteers under the FLSA and FMLA. *Id.* § 553.106 ["[v]olunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers."].

Defendant cites *Harris v. Mecosta Cty.,* No. 1:95-CV-61, 1996 WL 343336 (W.D. Mich. Feb. 6, 1996) for the proposition that an hourly payment does not necessarily impair volunteer status. *Harris*, 1996 WL 343336, at *4. Referencing the Department of Labor Wage & Hour Division (WHD) Opinion Letter FLSA 2008-15 for determining nominal compensation, the "20 percent test," Defendant says the average Form-1099 MISC payment a volunteer firefighter receives is $1,500.00 annually, "clearly. . . well below 20 percent of what it would cost to hire a full time employee to perform the same services." (Doc. #17 at 9).

Additionally, firefighters must attend mandatory trainings and take tests on their own time; they do so without compensation. Defendant says the firefighters are not required to respond to fire calls; they receive no health insurance, sick or vacation time, social security benefits, or premium pay; and, the City has no control over their service. Defendant emphasizes that the Gibraltar firefighters "do not work shifts, do not staff a fire station, and [they do] maintain other employment." *Id.* at 12.

Finally, Defendant argues that the firefighters do not meet the statutory definition of an employee engaged "in fire protection activities." Under the FLSA, an employee in fire protection activities has, *inter alia*, the "legal authority and responsibility to engage in

3

fire suppression." 29 U.S.C. § 203(y)(1). Defendant argues that since the firefighters have no obligation to respond to fire calls, they do not meet the FLSA statutory requirement to be employees. (Doc. # 25 at 14-15).

In response, Plaintiff argues that "there is no way to characterize Gibraltar's payment of $15 per hour for all hours worked as anything other than an express promise of compensation." Plaintiff relies on Wage and Hour Division (WHD) Opinion Letter FLSA 2002-6 for the proposition that payment of an hourly wage for performance of firefighter duties negates volunteer status. WHD Opinion Letter FLSA 2002-6 (Aug. 13, 2002), *available at*

http://www.dol.gov/whd/opinion/FLSA/2002/2002_08_13_6_FLSA.pdf. Plaintiff also cites 29 C.F.R. § § 553.101(a), .104, and .106(a)-(f), in support of his position that the firefighters receive wages due to the amount and manner of their "compensation."

Plaintiff says these regulations are outcome determinative. They necessarily lead to the conclusion that firefighters are not volunteers; therefore, they are employees.

Plaintiff also relies on *Krause v. Cherry Hill Fire Dist. 13*, 969 F.Supp. 270 (D.N.J 1997) for support. The *Krause* court observed that a payment of $5.05 to $9.00 per hour to staff a fire station was more than a nominal fee and was "compensation." *Krause,* 969 F.Supp. at 277. Plaintiff alleges that under *Krause*, the payment of $15 per reporting hour must be viewed as an hourly wage – not as payment for expenses or a nominal fee.

Finally, Plaintiff points to other employment factors under the "economic realities" test discussed *infra*. Plaintiff alleges that these factors support his argument that the

firefighters should be considered employees under the FLSA, and accordingly, the FMLA.

## IV.   ANALYSIS

### A. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). Summary judgment is not appropriate if the evidence indicates that a reasonable trier of fact could rule in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

When ruling on a summary judgment motion, the court must view facts in the light most favorable to the non-moving party. *Id.* Additionally, the court must draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden to show "the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim." *Moses v. Providence Hosp. and Med. Ctrs., Inc.,* 561 F.3d 573, 578 (6th Cir. 2009). Once this burden is met, it shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585-87. The nonmoving party must establish

5

more than some "metaphysical doubt" as to the material facts.  *Id.* at 586.  Plaintiff must

establish a genuine issue with specific facts and affirmative evidence; it "may not rest

upon mere allegations or denials of [its] pleading."  *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 256-57 (1986).  "The Court must consider all pleadings, depositions,

affidavits, and admissions on file, and draw all justifiable inferences in favor of the party

opposing the motion."  *Golliday v. Chase Home Fin., LLC,* 761 F.Supp.2d 629, 634

(W.D. Mich. 2011) (citing *Matsushita*, 475 U.S. at 587 and *Smith v. Williams-Ash*, 520

F.3d 596, 599 (6th Cir. 2008)).

The parties agree there are no issues of fact and the case is postured for

decision by the Court as a matter of law.

### B.  Plaintiff's Prima Facie Case under FMLA

To sustain an FMLA violation, Plaintiff must plead and prove that:

(1) [he is] an eligible employee, (2) the defendant was an employer as
defined under the FMLA, (3) [he is] entitled to leave under the FMLA, (4)
[he] gave the employer notice of [his] intention to take leave, and (5) the
employer denied the employee FMLA benefits to which [he] was entitled.

*Edgar v. JAC Products, Inc.,* 443 F.3d 501, 507 (6th Cir. 2006); *see generally Purdham*

*v. Fairfax County School Bd.,* 637 F.3d 421, 427 (4th Cir. 2011) (quoting *Benshoff v.*

*City of Virginia Beach,* 180 F.3d 136, 140 (4th Cir. 1999) [holding, *inter alia*, that plaintiff

has the initial burden to show that an employer-employee relationship exists.]).

Whether there is an employment relationship under the FMLA is a question of

law to be determined by the Court.  *Solis v. Laurelbrook Sanitarium and School, Inc.,*

642 F.3d 518, 521-22 (6th Cir. 2011) (citing *Fegley v. Higgins,* 19 F.3d 1126, 1132 (6th

Cir. 1994); *see also U.S. Dept. of Labor v. Cole Enterprises, Inc.,* 62 F.3d 775, 778 (6th

Cir. 1995).  The Court must assess the "objective facts surrounding the services performed to determine whether the totality of the circumstances supports a holding that, under the statute and under the regulations, the [Gibraltar firefighters] are volunteers." *Cleveland v. City of Elmendorf*, 388 F.3d 522, 528 (5th Cir. 2004).  *See also Purdham v. Fairfax County School Bd.,* 637 F.3d 421, 428 (4th Cir. 2011),

### C. Relationship between the FMLA and FLSA

#### *The FMLA*

Under the FMLA, an eligible employee is entitled to twelve workweeks of leave during any twelve-month period due to a serious health problem that makes the employee unable to perform his or her job duties.  29 U.S.C. § 2612(a).  An "eligible employee" is an employee who has been employed for at least twelve months by the employer and for at least 1,250 hours of service during the previous twelve-month period.  *Id.* § 2611(2)(A)(i)-(ii).  There is no dispute that Plaintiff meets these criteria. However, there is a third eligibility requirement, and that is that the employee be employed at a worksite where there are fifty or more people employed within seventy-five miles of that worksite.  *Id.*  § 2611(2)(B)(ii), 29 C.F.R. § 825.108(d).  Thus, whether Plaintiff is an eligible employee depends on the number of people the City employs, which, in turn, depends on whether its firefighters are employees under the FMLA.  It is undisputed that if the Gibraltar firefighters are employees, the City meets the 50 plus employee criteria, and Mendel can pursue his FMLA claim.  Conversely, if the firefighters are volunteers, the City does not employ enough people for Mendel to be eligible for FMLA benefits, and his claim must be dismissed.

#### *Employee as Defined by the Fair Labor Standards Act (FLSA)*

7

Congress explicitly authorized the Department of Labor to implement regulations designed to further the policies of the FMLA.  29 U.S.C. § 2654.  In the FMLA, the terms "employ" and "employee" have the same meaning as used in the FLSA, 28 U.S.C. § 203 (g) and (e)(1) respectively; accordingly, the Court must interpret these terms using law applicable to the FLSA.  29 U.S.C. § 2611(3).  Under the FLSA, "'employ' [means] to suffer or permit to work."  *Id.* § 203(g).  The term "'employee' means any individual employed by an employer."  *Id.* § 203(e)(1).  These definitions are not helpful in the least.  And, while the Supreme Court directed that exemptions from the FLSA are to be construed narrowly and in favor of employees, *Tony and Susan Alamo Found. V. Sec'y of Labor*, 471 U.S. 290, 295-96 (1985), there are a dearth of cases offering a precise definition of "employee" (many tell us what an "employee" is not).

The FLSA says:

> **(A)** [t]he term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if--
> **(i)** the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
> **(ii)** such services are not the same type of services which the individual is employed to perform for such public agency.

*Id.* § 203(e)(4)(A).

Application of the FLSA is intended to be broad, but not unlimited.  *See Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947).  Under the FLSA, the definition of "employee" was intended to ensure that workers laboring for compensation are paid at least the minimum wage.  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947).  But, the term "employee" was not intended to apply to all people who work on the premises of another but who may be working for their own personal purpose,

8

pleasure, or advantage.  And, the broad definition of "employ" and "employee" "cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction."  *Id.*

The definition of volunteer was liberalized by amendments which went into effect in 1986.  (Pub. L, No. 99-150, 99 Stat. 787 (1985)).  Legislative history suggests that Congress intended to prevent abuse and manipulation of volunteers.  *See* S. Rep. No. 99-159 (1985):

> A new paragraph 3(E)(4) is added to the FLSA to make clear that persons performing volunteer services for state and local governments should not be regarded as 'employees' under the statute.  The Committee does not intend to discourage or impede volunteer activities undertaken for humanitarian purposes.  At the same time, the Committee wishes to prevent any manipulation or abuse of minimum wage requirements through coercion or undue pressure upon employees to 'volunteer.'
>
> To this end, the paragraph provides that an individual who performs services on a volunteer basis for a state or local government shall not be deemed an employee for FLSA purposes: even if the individual receives expenses, a nominal fee or reasonable benefits to perform the services.

The amendment was designed to reduce the widespread practice of failing to pay sufficiently for services rendered, when the circumstances otherwise had all of the indicia of an employer-employee relationship.  It appears that the intention of the amendment was to set guidelines to reduce the over-classification of people as volunteers, but not necessarily to restrict the FLSA language to pertain only to people who were either employees or volunteers, and nothing else in between.  While this legislative history does not have the force of law, and it does not speak directly to the

question at hand, it does provide insight into determining how to categorize and classify these firefighters.

The Court finds that while the firefighters may not fit the traditional notion of a volunteer, the pertinent inquiry is not whether they are volunteers, but whether they are "employees" as a matter of law.  The Court rejects Plaintiff's argument that if a person is not a volunteer, he is a *de facto* employee.  The FLSA only states that volunteers are not employees; however other classes of workers are also not employees for purposes of the FLSA.  For example, independent contractors are not considered volunteers, nor are they employees under the FLSA.  Additionally, eligible student interns are considered "trainees" and not employees under the FLSA; however, they work for the benefit and under the supervision of their "employer."  *See Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), *Walling v. Nashville, Chattanooga and St. Louis Railway*, 330 U.S. 158 (1947), *and* DEPARTMENT OF LABOR, FIELD OPERATIONS HANDBOOK, § 10b11 (1993), *available at* http://www.dol.gov/whd/FOH/ [outlining a six-factor criteria to determine when student interns are not employees under the FLSA].  Further classifications of workers who may not be considered employees or volunteers per the Department of Labor include: graduate students, Job Corps enrollees, certain university or college students, prison inmates, or foster parents.  DEPARTMENT OF LABOR, FIELD OPERATIONS HANDBOOK, § 10b18, 22, 24, 27, 29 (1993), *available at* http://www.dol.gov/whd/FOH/.

### D.  Application to the Gibraltar Firefighters

With these principles in mind, the Court must decide whether the firefighters are employees under the FLSA.  Courts use various tests for guidance when determining

whether the totality of circumstances suggests an employer-employee relationship exists based on the objective facts surrounding service.  Almost all of these tests include an examination of control and compensation, two considerations which the Court finds compelling here.  However, the Court finds that there are other factors in the totality of circumstances which lead to the conclusion that the firefighters are not employees.

### Tests for "Employee" Under FLSA

Various courts have attempted to clarify the imprecise definitions of "employ" and "employee."  For example, in *Todaro v. The Township of Union,* 27 F.Supp.2d 517 (D.N.J 1998), the court gave the term "employment" its ordinary meaning: "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Todaro*, 27 F.Supp.2d at 533 (citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)).

Volunteers who receive no compensation are easy to distinguish from employees.  The more difficult situation is the so-called volunteer who gets some form of monetary payment or benefit, in addition to the satisfaction that comes with volunteering.  This "enhanced" volunteer straddles the line between a traditional volunteer and an employee.  Congress has provided little guidance in determining their status. *See generally* 5 U.S.C. § 8101(1)(B) [which includes individuals who are unpaid, or paid only nominal amounts, as employees].

Courts historically rely on four different tests to determine whether a person is an employee: (1) common law agency law (determining whether or not the traditional

11

master/servant relationship exists, thus indicating an employer/employee relationship), (2) primary purpose (whether the relationship between the prospective employee/employer is primarily an economic one, or primarily something else, such as education or charity), (3) economic reality (various, but often six enumerated, elements to indicate whether the prospective employee is economically dependent on the employer, thus granting an employee/employer relationship), and (4) a hybrid of common law and economic reality.  *See generally Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-28 (1992), *Creative Non-Violence v. Reid,* 490 U.S. 730, 751-52 (1989) [both discussing the use of common law agency as it relates to employee relationships]; *N.L.R.B. v. Hearst Publications*, 322 U.S. 111, 123-32 (1944), *overruled by Nationwide Mut. Ins. Co. supra*, *Brown University*, 342 N.L.R.B. 483, 495-500 (2004) [both discussing*, inter alia*, the primary purpose test as an alternative to common law agency as it relates to employee relationships]; *Tony and Susan Alamo Foundation*, 471 U.S at 299-303, *Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. 1984) [both discussing the economic reality test as it relates to employee relationships]; *E.E.O.C. v. Zippo Manufacturing Co.,* 713 F.2d 32, 35-40 (3d Cir. 1983), *Deal v. State Farm County Mutual Insurance Co. of Texas*, 5 F.3d 117 (5th Cir. 1993) [both discussing hybrid tests as it relates to employee relationships].

The use of these tests varies from jurisdiction to jurisdiction, and is predominantly used to distinguish employees from independent contractors.  Nonetheless, these tests are useful and provide insight into whether the firefighters are employees, traditional volunteers, enhanced volunteers, or something else altogether.  These tests are

informative only; as discussed *supra*, the Court must examine the totality of the particular circumstances at hand. *Cleveland*, 388 F.3d at 528.

While each test has its own set of factors, a common strand runs through them: control.  This factor best informs the Court's decision that the firefighters are not employees.  And, Plaintiff presents no evidence showing that the firefighters are controlled by the Gibraltar City Council.  This fact, coupled with others discussed *infra,* leads the Court to only one conclusion – the firefighters are not employees.

### *Control*

The lack of control by the Defendant over these firefighters is significant.  The Plaintiff fails to show that the Defendant maintains any control over these firefighters; such control is the essence of the common law master/servant relationship associated with employment.  *See Nationwide Mut. Ins. Co., v. Darden,* 504 U.S. 318, 323-24 (1992).  Lack of control is illustrated by this undisputed fact: the firefighters are not required to report when the City calls them to respond to a fire emergency.  A fire can be raging in Gibraltar, like the Tara Plantation in *Gone with the Wind*, and these firefighters would have absolutely no duty to show up, even if they were sitting in a restaurant a block away.  Further, firefighters do not suffer any disciplinary measures if they do not respond when called.  In fact, the only evidence of when a firefighter loses his ability to be a volunteer is if he does not meet government-mandated training requirements.

Other indicia of lack of control are that Gibraltar firefighters do not work set shifts, they do not have a consistent work schedule, nor do they staff a fire station during off-

call hours.  (*See* Doc. # 17 at 12).  This indicia has not been refuted by the Plaintiff.

Gibraltar firefighters are never compelled to perform any duties by the City of Gibraltar.

### *Wages*

Plaintiff asserts that the $15 per hour that the firefighters receive is

compensation.  Defendant says it is a mere nominal payment.  The Court acknowledges

that the $15 per hour is not a nominal payment.  But it does not take into account the

number of hours that the firefighters must train and test on their own time, or undergo

certification.  The Court finds that this hourly rate, in and of itself, does not outweigh the

lack of control that the Court must take into account under the totality of the

circumstances.

### *Other Factors*

On one hand Plaintiff maintains that the $15 per hour is outcome determinative,

but he also argues that the "economic realities" test supports his position.  This

argument is flawed.

The economic realities test has generally been used to determine the difference

between independent contractors and employees; many courts have found little

guidance in this test when applying it to volunteers.  *See Krause v. Cherry Hill Fire

District 13*, 969 F.Supp 270, 274-75 (D.N.J. 1997); *Rodriguez v. Township of Holiday

Lakes*, 866 F.Supp. 1012, 1020 (WD Ark 1994); *Todaro,* 27 F.Supp.2d at 534.

The Sixth Circuit Court outlined the economic realities test in *Donovan v.

Brandel*, 736 F.2d 1114 (6th Cir. 1984), in determining whether migrant pickle farmers

were employees or independent contractors under the FLSA.  The Court cited a six-

factor test to make this determination:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; and 5) the degree of the alleged employer's right to control the manner in which the work is performed . . . [and (6)] whether the service rendered is an integral part of the alleged employer's business.

*Donovan,* 736 F.2d at 1117, 1119-1120.

As other courts have found, this Court does not find the economic realities test to be particularly helpful.  It was developed to evaluate independent contractors; no one claims the firefighters fit into that category.  However, control, again, is a pertinent factor in deciding whether the relationship is that of master-servant or something else.

Plaintiff outlines several other factors as "other indicia of employment," or other non-enumerated factors in the economic realities test, including that: (1) volunteers are subject to a hiring process, (2) Defendant keeps their personnel files, (3) they have training requirements, and (4) volunteers can be promoted or discharged.

These factors have insufficient weight to overcome the lack of control over the firefighters.  Furthermore, these factors are probably often present when a volunteer is a traditional one; training would be required, the volunteer would be subject to a background check, and the volunteer could be released if he/she does not meet certain standards.

Additionally, although Plaintiff urges the Court not to consider the definition of an "employee in fire protection activities" in 29 U.S.C. § 203 (y)(1), the Court does find it instructive.  An employee in fire protection activities has, *inter alia*, the "legal authority and responsibility to engage in fire suppression."  *Id.*  While this language has not been construed in this jurisdiction, other courts have held that the term "responsibility"

connotes a requirement to perform; it "is something that is mandatory and expected to be completed as part of someone's role or job." *Lawrence v. City of Philadelphia, Pa.,* 527 F.3d 299, 317 (3rd Cir. PA 2008). Gibraltar firefighters are not required to respond to a fire dispatch, nor are they subject to discipline for failure to respond. (*See* Doc. # 25 at 15). Plaintiff argues that the application of this definition is limited to overtime wages for firefighters, but this limitation is not within the statute itself.

Finally, it should be noted that the legislative intent of the applicable FLSA sections is to protect volunteers from abuse and manipulation. *See* S. Rep. No. 99-159 (1985). It is understandable that protections are offered to shield volunteers from employers looking for inexpensive or free labor – but that is not the case here. There are no allegations on behalf of the firefighters that they should be considered employees to effectuate the remedial purpose of the FLSA. Instead, another employee independent of the fire department seeks to categorize these firefighters as employees for purposes of enforcing the FMLA.

## V.    CONCLUSION

During oral argument, Plaintiff maintained that the payment to the firefighters was not nominal and could only be classified as a wage; therefore, the firefighters are *ipso facto* employees. The Court disagrees with this reasoning. The fact that the FLSA chooses to define an employee by what he is not (i.e., a volunteer), does not mean that a person is either an employee or a volunteer, or that someone who is not a volunteer necessarily is an employee. Indeed, the statute does not say that independent contractors are not employees; but they clearly are not. Similarly, student interns, while

16

certainly acting under the control of their "employer" and for the benefit of their employer, are not considered employees to whom compensation must be paid.

The Court has assessed the objective facts surrounding the firefighters to determine whether the totality of circumstances supports a holding that they are employees. The objective facts support a conclusion that they are not. These factors include the total lack of control by the City over whether or when the firefighters work; the fact that the firefighters are not required to respond when called, and are not subject to discipline for failure to do so; the firefighters are not economically dependent on the City; and other considerations discussed above. Plaintiff's wage argument is simply not sufficient to overcome these factors.

The City of Gibraltar firefighters may occupy a "grey area;" they may be "enhanced" volunteers not fully discussed in the FMLA or the FLSA. However, the Court need not address this issue; it is enough that there is no material question of fact as to whether the firefighters are "employees" for purposes of applying the FMLA. They are not.

Defendant's Summary Judgment Motion is **GRANTED**; judgment will enter for the Defendant.

**IT IS ORDERED.**

　　　　　　　　　　　　　　　　　　 /s/ Victoria A. Roberts
　　　　　　　　　　　　　　　　　　Victoria A. Roberts
　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  1/31/12

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 31, 2012January 31, 2012.

S/Linda Vertriest

17