UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL MENDEL,

              Plaintiff,        CASE NUMBERS: 11-10496
                                       HONORABLE VICTORIA A. ROBERTS

v.

CITY OF GIBRALTAR,

              Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #49) AND DENYING SANCTIONS (DOC. #50)**

## I.    INTRODUCTION

Paul Mendel alleges that the City of Gibraltar ("Gibraltar") terminated him in violation of the Family Medical Leave Act ("FMLA").

Gibraltar argues that the FMLA only entitles employees to twelve weeks of leave; employers are not required to hold a position open longer. Gibraltar says that it is entitled to summary judgment because Mendel's illness extended beyond the statutory allotment. Alternatively, Gibraltar says that there was no FMLA violation because Mendel was terminated for a non-discriminatory reason.

Gibraltar also moves for sanctions, arguing that Mendel chose to ignore controlling precedent.

Mendel does not dispute that: (1) under the FMLA he is only entitled to twelve weeks of leave or (2) that he was ill for approximately six months. He opposes Gibraltar's motion and moves for judgment arguing that his twelve weeks was tolled

because Gibraltar interfered with his leave by firing him, after he used roughly two weeks of leave.

Gibraltar's motion is **GRANTED**; in this Circuit, leave continues to accrue and expires after the twelfth week, even if a defendant is fired with FMLA-leave time remaining.

Nonetheless, Gibraltar's motion for sanctions is **DENIED**. Mendel did bring a reasonable claim.

## II. BACKGROUND

Fall, 2004, Mendel began working for Gibraltar as a police dispatcher. Dispatchers do not have a "set" schedule. Gibraltar sets the dispatcher schedule based on employee preferences and past schedules. Some employees work very little during a year, others work more. During 2008, Mendel worked an average of thirty-five hours a week.

Beginning Fall, 2007, Mendel also worked for the City of Trenton ("Trenton") as a dispatcher.

In 2008, Mendel experienced abdominal pain. By October, he had to undergo surgery. Mendel was unable to work his scheduled shifts from October 2, 2008 - October 5, 2008.

Mendel's pain intensified over the next few months. In December, 2008, Mendel complained that the pain spread to his hip, groin, back and right side. He asked to be removed from the Trenton schedule, but tried to work Gibraltar's schedule. Mendel testified that in December, 2008 he told Trenton "I got some medical issues, and I'm not

going to fill out any availability until I am able to return."

Pain in December prevented Mendel from working eight consecutive shifts from December 2, 2008 - December 22, 2008, with Gibraltar. Mendel's testimony is that his debilitating pain started "like the second week in December of 2008 . . . until . . . May of '09."

Mendel was also unable to work his January shifts. Chief Canterbury took Mendel off the dispatcher schedule until January 26, 2009.

After being taken off the schedule, Mendel met with Chief Canterbury and informed the Chief that he was scheduled to have another surgery for his pain on January 27, 2009. Mendel advised that he would return to work the week of February 7, 2009. Chief Canterbury placed Mendel on the February schedule; however, Mendel did not report to work on February 7th, 8th, 11th, 12th or 13th due to pain.

Chief Canterbury did not schedule Mendel to work again. On February 13, 2009, Chief Canterbury sent Mendel a letter stating that he was removed from the February and March schedule. The letter told Mendel to provide a doctor's note by February 16, 2009. It also said that if a doctor's note was not provided by the date listed, voluntary termination would be presumed.

On February 20, 2009, Mendel gave Chief Canterbury his doctor's note explaining his health issue.

On February 23, 2009, Chief Canterbury sent Mendel another letter saying that Gibraltar believed that Mendel voluntarily terminated his employment because he did not timely provide a doctor's note.

On May 5, 2009, Mendel had another surgery. He was not cleared to work until

3

June 1, 2009. On June 1, 2009, Mendel returned to Trenton.

### III. STANDARD OF REVIEW

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

### IV. ANALYSIS

#### A. Motion for Summary Judgment

Mendel filed a claim alleging that Gibraltar interfered with medical leave in violation of the FMLA.

To establish an "interference claim" under the FMLA, a plaintiff must prove that (1) he was an eligible employee, (2) defendant was a covered employer, (3) he was entitled to leave under the FMLA, (4) he gave his employer notice of intent to take leave, and (5) the employer denied FMLA benefits or interfered with FMLA rights. *YHarris v. Metro Govt of Nashville & Davidson Cnty, Tenn.* 594 F2d 476, 482 (6th Cir 2010).

4

The only criteria in dispute here are prongs four and five. There is no question that Mendel was eligible for leave under the FMLA, that Gibraltar is a covered employer, and that Mendel was unable to work from December, 2008 until June 1, 2009. *See generally*, Defendant's Second Motion for Summary Judgment, Doc. 49 at 9.

Gibraltar argues that as a matter of law it is entitled to judgment -- even if it improperly denied Mendel's FMLA leave -- because Mendel could not return to work within twelve weeks.

Under the FMLA, a qualifying employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . ." 29 U.S.C. § 2612(a)(1). "Once the 12-week period ends, however, employees who remain 'unable to perform an essential function of the position because of a physical or mental condition . . . [have] no right to restoration to another position under the FMLA.'" *Edgar v. JAC Prods.*, 443 F.3d 501, 506 (6th Cir. 2006)(quoting 29 C.F.R. § 825.214(b).

FMLA leave is counted according to:

(1) [t]he calendar year; (2) [a]ny fixed 12-month leave year, such as a fiscal year, a year required by State law, or a year starting on an employee's anniversary date; (3) [t]he 12-month period measured forward from the date any employee's first FMLA leave under paragraph (a) begins; or, (4) [a] "rolling" 12-month period measured backward from the date an employee uses any FMLA leave.

29 CFR 825.200(b)(1).

When an employer fails to select a 12 month period for counting FMLA, "the option that provides the most beneficial outcome for the employee will be used." *Id.*

Gibraltar says that it is most beneficial to Mendel to start counting the 12 week period from the beginning of the calendar year. Mendel questions, but does not

5

challenge Gibraltar's logic:

> It is unclear how Gibraltar determines that a calendar year would be "most beneficial" to Mendel (and it is plain that - even crediting Gibraltar's statement that Mendel could not work from December 12, 2008 until June 1, 2009 - he would not in consequence "receive an additional 12 weeks starting January 1, 2009," since that is the start date of the applicable 12-month period, per Gibraltar's calculation).  Even more unclear is how Gibraltar calculates Mendel's 12 weeks, assuming the subject year started on January 1, 2009.  Counting 12 weeks from January 1, 2009, Gibraltar asserts that Mendel's leave would have expired 12 weeks later, or on March 27, 2009, or nine weeks before his June 1, 2009 return to work date.  This accounting has no basis in the regulations for purposes of Mendel's circumstances.

Mendel's Response Brief to Defendant's Second Motion for Summary Judgment, Doc. 49 at 4-5; rather, Mendel says his termination tolled his FMLA leave.

Calculating leave from January 1, 2009 is most beneficial to Mendel. From that date, his leave expired on March 26, 2009. To keep his job, FMLA required that Mendel return to work on March 27th.

Mendel concedes that he could not return to work until June 1, 2009, which far exceeds twelve *calendar* weeks; Mendel, however, argues that because he was a part-time employee, worked a flex shift and was fired, his FMLA weeks are calculated nontraditional. Mendel says his time should be calculated like this:

| | | |
|---|---|---|
| January 1-5, 2009 | 3 days | 0.6 week |
| January 6-12, 2009 | 1 day | 0.2 week |
| January 13-19, 2009 | 0 | 0 week |
| January 20-26, 2009 | 1 | 0.2 week |
| January 27-February 2, 2009 | 2 | 0.4 week |
| February 3-9, 2009 | 2 | 0.4 week |
| February 10-16, 2009 | 3 | 0.6 week |
| (February 17-June 1, 2009) | 0 | 0 week |

Plaintiff's Response to Defendants Second Motion for Summary Judgment, Doc. 49 at 5.

Mendel argues that his FMLA-leave was tolled because Gibraltar fired him during the 12 week period. In response Gibraltar cites to the Sixth Circuit's *Edgar* decision, which reaffirmed that termination does not toll FMLA leave.

The *Edgar* court reasoned that a plaintiff cannot recover under the FMLA even if he is terminated before the remaining FMLA-leave expires, if he could not return to work prior to week twelve. *Id.* at 510. The panel further clarified that, in an "*interference claim*," evidence acquired after termination that suggests that an employee could not have returned by the end of the 12-week period must be used to evaluate termination. *Id.* at 511-12 ("rather than inquiring into the employer's motive at the time of making the decision, the court is charged with resolving the objective question of whether the employee was capable of resuming his or her duties withing the FMLA-leave period . . . even if the medical evidence on which they rely did not emerge until after the employment decision").

Mendel tries to differentiate the facts of his case from this precedent by arguing that part-time employees' weeks are calculated according to 29 CFR 825.205 (b):

> Where an employee works a part-time schedule or variable hours, the amount of FMLA leave that an employee uses is determined on a pro rata or proportional basis. If an employee who would otherwise work 30 hours per week, but works only 20 hours a week under a reduced leave schedule, the employee's 10 hours of leave would constitute one-third (1/3) of a week of FMLA leave for each week the employee works the reduced leave schedule. An employer may convert these fractions to their hourly equivalent so long as the conversion equitably reflects the employee's total normally scheduled hours. An employee does not accrue FMLA-protected leave at any particular hourly rate.

*Id.*

Mendel says that because he was fired, and could not work his flex schedule, the time

between his termination and recovery: February 17, 2009 to June 1, 2009 -- fifteen weeks -- do not count.

Mendel's reasoning is flawed and wholly unsupported. Courts read this statute exactly as it is written: if an FMLA qualifying employee is scheduled to work 20 hours, but misses 10 hours, that employee has used half a week of FMLA-leave. *See generally, Bertrand v. City of Lake Charles*, 2012 U.S. Dist. LEXIS 63330 (W.D. La. May 3, 2012). The plain reading of this statute is that a part-time employee who misses his entire scheduled work week, uses a full FMLA week.

Mendel missed every day he was scheduled to work for two months straight from January 1, 2009. His method of arriving at two weeks is unsupported.

Further, Mendel makes no attempt to show why FMLA would treat a part-time employee's post termination weeks different from a full-time employee's, even though his argument is essentially that after termination the FMLA -leave clock stops for part-time employees, but not for full-time employees. Without more, this Court is bound by the Sixth Circuit's rulings, which say that terminating an employee does not toll FMLA weeks. The Court finds *Edgar* controlling.

Mendel's claim would be dismissed even if his FMLA-leave started from the date of termination. More than twelve weeks lapsed between Mendel's termination and recovery. This time frame alone could defeat his claim.

The question now becomes: how are FMLA-leave weeks following termination calculated for part-time employees who work flex schedules? The answer is in § 825.205(3):

> If an employee's schedule varies from week to week to such an extent that

> an employer is unable to determine with any certainty how many hours the employee would otherwise have worked (but for the taking of FMLA leave), a weekly average of the hours scheduled over the 12 months prior to the beginning of the leave period (including any hours for which the employee took leave of any type) would be used for calculating the employee's leave entitlement.

*Id.*

The FMLA requires the Court to look at the weekly average of hours Mendel worked in 2008 to determine how the fifteen weeks between Mendel's termination and recovery are calculated.

In 2008, Mendel worked a full-time schedule; he worked an average of thirty-five hours a week. Thus, the Court must assume that Mendel would have worked a full-time schedule for calculation purposes.

All fifteen weeks count; Mendel was not capable of working one day out of the fifteen weeks. Mendel concedes in his brief that his return date was June 1, 2009. *See generally*, Mendel's Response Brief to Defendants Second Motion for Summary Judgment, Doc. 49 at 4. Indeed, Mendel did not return to his second job at Trenton until June 1, 2009.

Starting from February 17, 2009, Mendel's FMLA-leave would have expired on May 12, 2009, more than three weeks before he could have returned to work.

Even if there was a FMLA violation, there can be no recovery; Mendel's injury exceeded the statutory framework. Mendel's Complaint is **DISMISSED**.

### B.   Motion for Sanctions

Gibraltar filed a motion for sanctions under Federal Rule Civil Procedure 11. It says Sixth Circuit precedent unequivocally establishes that an employee is only entitled

9

to twelve weeks of FMLA-leave. Gibraltar argues that it provided Mendel with the controlling law, offering him an opportunity to withdraw his Complaint. Mendel refused.

Mendel does not dispute Gibraltar's assertions or that he was unable to work from January 1, 2009 to June 1, 2009, nor does he dispute that he was only entitled to twelve weeks of leave. Mendel does challenge the manner in which FMLA leave is calculated for part-time employees. He says that he rightfully challenged the calculation of his leave because no case addressed part-time employees who work flex schedules.

Federal Rule of Civil Procedure 11(c) authorizes courts to issue sanctions, "[i]f after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." *Id.* "In this circuit, the test for the imposition of Rule 11 sanctions remains, after the 1993 amendments, 'whether the individual's conduct was reasonable under the circumstances."' *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997)(quoting *Lemaster v. United States,* 891 F.2d 115, 118 (6th Cir. 1989) (quotation omitted)).

The Court declines to grant sanctions. Mendel did find a way to distinguish the facts of his case from binding precedent, even though his arguments were not persuasive.

Gibraltar's motion for sanctions is **DENIED.**

## V.    CONCLUSION

Mendel's Complaint is **DISMISSED**. Gibraltar's motion for sanctions is **DENIED.**
**IT IS ORDERED.**

                        S/Victoria A. Roberts
                        Victoria A. Roberts
                        United States District Judge

Dated: June 6, 2014

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 6, 2014.

S/Carol A. Pinegar
Deputy Clerk

---